IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00698-CNS-SBP

RONALD LOCK,

    Plaintiff,

v.

ZIMMER US, INC, d/b/a ZIMMER COLORADO and ZIMMER BIOMET; ZIMMER BIOMET HOLDINGS, INC.; ZIMMER INC; BIOMET ORTHOPEDICS, LLC; and BIOMET MANUFACTURING LLC,

    Defendants.

---

### ORDER OF UNITED STATES MAGISTRATE JUDGE

**Susan Prose, United States Magistrate Judge**

This matter comes before the court on Plaintiff Ronald Lock's Motion to Compel Discovery ("Plaintiff's Motion"), ECF No. 55, and Defendants Zimmer US, Inc, Zimmer Biomet Holdings, Inc., and Zimmer Inc's ("Defendants") Motion to Compel Discovery ("Defendants' Motion"), as formally raised during a July 2, 2025 conference before this court (the "Conference"), *see* ECF No. 76 (Plaintiff's Motion and Defendants' Motion together, the "Motions"). Having now reviewed the Motions, the evidence in support of the Motions, and the applicable law, this court respectfully finds, for the following reasons, that Plaintiff's Motion is **DENIED**, while Defendants' Motion is **GRANTED**.

    **I.**    **BACKGROUND**

The following facts are drawn from the docket and from Plaintiff's Motion, except as otherwise noted, and are not disputed for the purpose of ruling upon the Motions.

The underlying dispute arose after Plaintiff was injured in a car crash on October 28, 2017. Plaintiff's Motion at 1. As part of Plaintiff's treatment for his injuries, an Orthopedic Salvage System ("OSS") device (the "Device"), constructed by Defendants and made from parts component to a "system" of parts manufactured by Defendants, was implanted in Plaintiff's right leg. *Id*. Plaintiff claims that the Device fractured on January 4, 2021, while Plaintiff was "simply standing in his kitchen." *Id*. at 2. After this incident occurred, Plaintiff underwent multiple surgeries on his right leg, and the leg was eventually amputated above the knee. *Id*.

On December 28, 2022, Plaintiff filed suit against Defendants in Colorado state court, asserting claims related to the alleged fracture of the Device. Complaint, ECF No. 1-4. Defendants removed the action to this court on March 17, 2023. ECF No. 1. Defendants answered Plaintiff's Complaint on March 24, 2023, ECF No. 16, and filed an amended answer on April 6, 2023. ECF No. 18.

On October 26, 2023, Plaintiff served a set of interrogatories ("ROGs") and requests for production ("RFPs") on Defendants. ECF No. 55-4. In all, Plaintiff included twelve ROGs and sixteen RFPs in the request. *Id*. Defendants provided some materials in response, but objected to certain requests made by Plaintiff, while Plaintiff alleged that there were issues with the production made by Defendants. *See* Response, ECF No. 57 at 1-3. The parties met and conferred to discuss these discovery issues, also discussing the disputes via email, but did not come to a full resolution. *Id*.

On October 29, 2024, Plaintiff filed Plaintiff's Motion. In Plaintiff's Motion, Plaintiff raises seven arguments as to why the court should compel discovery, stating that: 1) Defendants must provide complaint files related to OSS device failures; 2) information relating to

"substantially similar" products to the Device is discoverable; 3) Defendants' assertion of HIPAA privilege is improper; 4) Defendants have improperly withheld documents based upon individuals Jerrad Stevens and Paul Ligrani not being employed by Defendants; 5) Defendants have improperly withheld testing and research information from Plaintiff; 6) lawsuits involving claims of failures of the OSS system are discoverable; and 7) Defendants have improperly withheld relevant sales data and financial information from Plaintiff. Defendants opposed Plaintiff's Motion on November 19, 2024. Response, ECF No. 57.

On June 23, 2025, the parties sent a joint discovery statement to the court via email (the "Joint Discovery Statement"), in which the parties outlined a dispute regarding Defendants' request to allow their expert to perform non-destructive testing and analysis of the Device in a facility of their expert's choice.

On July 2, 2025, the court held the Conference to discuss all outstanding discovery issues, including the issues raised in Plaintiff's Motion and in the Joint Discovery Statement. *See* ECF No. 76. At the Conference, the court heard the parties regarding the issues raised in Plaintiff's Motion. *Id*. The court also heard the parties regarding the dispute previously raised in camera with the court via the Joint Discovery Statement—whether Defendants could compel production of the Device for testing at the facility chosen by their expert—at which time Defendants asked the court to resolve the issue through an opinion and order, thus instituting Defendants' Motion. *Id*. Plaintiff opposed Defendants' Motion in the Joint Discovery Statement and at the Conference.

II.   ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is relevant and proportional, the court must weigh the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The party moving to compel discovery must prove that the opposing party's answers are incomplete." *Lindquist v. Arapahoe Cnty.*, No. 10-cv-02264-REB-MEH, 2011 WL 3163095, at *1 (D. Colo. Aug. 5, 2011) (citations omitted).

   A.   *Plaintiff's Motion to Compel*

As stated above, Plaintiff raises seven arguments in Plaintiff's Motion, including argument six: that information regarding lawsuits involving claims of failures of the OSS system are discoverable. During the Conference, the parties agreed that Plaintiff's seventh argument, that Defendants have improperly withheld relevant sales data and financial information from Plaintiff, is now moot. After discussing Plaintiff's other arguments, the parties also agreed that they are likely to be able to resolve arguments one through five without the court's intervention and are no longer asking the court to rule upon those arguments at this time. However, the parties did not believe that they would be able to reach an agreement regarding the sixth argument.

Accordingly, the court turns to Plaintiff's sixth argument, that information about lawsuits involving claims of failures of the OSS system are discoverable. Defendants argue in response that the court should deny Plaintiff's request in the Motion to compel discovery of all

4

"deposition testimony, signed discovery responses, and expert reports" from other cases involving the OSS system because Plaintiff did not make this specific request in his interrogatories and RFPs; instead, Plaintiff sought the case number and jurisdiction for all other OSS device cases and deposition transcripts for employees, expert witnesses, consultants, and agents deposed in OSS cases.

Defendants are correct that Plaintiff did not specifically request deposition testimony, signed discovery responses, and expert reports from other cases involving the OSS system. Plaintiff instead refers to ROG No. 10 and RFP No. 16, in which Plaintiff asks for the case number and jurisdiction for all other cases involving the safety or efficacy of an OSS system (or its component parts) and deposition transcripts for employees, expert witnesses, consultants, and agents deposed in OSS-related cases.[1] The court will not permit Plaintiff to compel discovery of materials that he did not request in his interrogatories or RFPs.

Defendants also argue that, even construing Plaintiff's request as one to compel case numbers and deposition transcripts, as stated in his interrogatories and RFPs, Plaintiff's request is tantamount to requesting "cloned discovery," which this court has previously found is not an appropriately tailored request.

Defendants cite *Weinreis*, in which the court noted that the plaintiffs had cast "far too wide a net by seeking *any and all* documents produced in a separate action" and that doing so

---

[1] ROG No. 10 specifically requests that Defendants "[i]dentify by case number and jurisdiction any and all lawsuits previously and currently filed against Defendant concerning the safety or efficacy of an OSS System and/or its component parts", while RFP No. 16 asks that Defendants produce "[a]ny and all deposition transcripts, in their entirety with exhibits, of any employee, expert witness, consultant and/or agent of [Defendants] taken at any time in any and all matters/litigation involving the OSS System and/or its component parts."

5

would result in the production of irrelevant documents and would not be proportional to the needs of the case. *Weinreis Ethanol, LLC v. Kramer*, No. 21-cv-03120-CMA-NRN, 2022 WL 8167977, at *2 (D. Colo. June 15, 2022). The court then went on to note that the separate action involved a separate entity, and also found that the plaintiffs' request for documents from yet another action was too broad because the claims brought in that action did not overlap with the claims brought in the action at issue. Defendants also cite *King County*, in which a federal court in Washington defined "cloned discovery" as "requesting all documents produced or received during other litigation or investigations" and found that the cloned discovery requested was "irrelevant and immaterial" because, while some or all the documents requested *could* be relevant, without more, the court could not ascertain whether the documents requested related to the plaintiffs' claims and defenses. *King Cnty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). In reaching this conclusion, the court stated that "[a p]laintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses." *Id*.

The determinations reached in the cases cited by Defendants are compelling and their connection to Plaintiff's request is clear: Plaintiff seeks discovery of a broad range of OSS-related case information and transcripts not clearly connected to the issue at hand. For instance, in RFP No. 16, Plaintiff asks Defendants to produce "any and all" deposition transcripts taken "at any time" from employees, expert witnesses, consultants, and agents of Defendants in "any and all" matters involving the OSS system, using almost no limiting language in stating his request. From the court's perspective, the probability that a substantial percentage of the deposition

6

transcripts that Plaintiff requests without limitation from across the (presumably broad) spectrum of cases involving the OSS system is, in all likelihood, very low, and Plaintiff has provided no reason to doubt this impression. Plaintiff's request is, therefore, overbroad, as it would result in the production of irrelevant documents and would not be proportional to the needs of the case. Similarly, while Plaintiff limits his ROG No. 10 request for case numbers to "any and all" lawsuits concerning the "safety or efficacy" of the OSS system and its component parts, the relevance of lawsuits concerning the efficacy of the OSS system is especially unclear, and as Defendants noted at the Conference, the OSS system has dozens of component parts, only eight of which are directly implicated here. As in *King County*, the court cannot tell, without more, whether the documents Plaintiff requests relate to Plaintiff's claims and defenses.

Accordingly, Plaintiff's requests in RFP No. 16 and ROG No. 10 are each overbroad, and the court sustains Defendants' objections to the related requests for production and interrogatories. Additionally, the parties have represented that they are attempting to resolve all other outstanding discovery issues raised in Plaintiff's Motion between themselves. Plaintiff's Motion is therefore denied without prejudice in its entirety, with leave to renew if the parties are unable to resolve the other issues raised in Plaintiff's Motion.

B. <u>Defendants' Motion</u>

Next, the court turns to the dispute first raised in camera by the parties, then subsequently discussed at the Conference, regarding Defendants' request for production of the Device for non-destructive testing.

Plaintiff does not dispute that Defendants should be permitted to conduct non-destructive testing on the Device. However, Plaintiff argues that Defendants should be required to conduct

7

all testing of the Device at Plaintiff's home laboratory. Defendants respond by stating that testing the Device in their expert's chosen laboratory is permissible and that fairness dictates that they be permitted to do so, that prejudice would result if Defendants are not permitted to perform testing in this manner, and that allowing Plaintiff's expert or representative to be present when testing is performed would violate the work product doctrine and consulting expert privilege. In turn, Plaintiff argues that he has a duty to take reasonable steps to preserve evidence within his control, that Defendants have not shown that the lab chosen by Defendants' expert has capabilities beyond those available at Plaintiff's lab and have offered no justification for relocating the Device, and that the risks of removing the Device from its current location outweigh the benefits of doing so.

Defendants provide an affidavit in which their expert states, inter alia, that he is unsure if a facility exists in Colorado that would allow him to conduct the inspection that he hopes to conduct on the Device, that he estimates it would take him an additional sixteen hours to conduct testing at a facility other than his home facility, that he will not perform destructive testing upon the device, and that if he is permitted to conduct testing in his home facility, that he will make reasonable efforts to return the device within seven days of receipt. Defendants have also stated that they are willing to enter a chain of custody protocol.

The court sees no reason to deny Defendants the ability to conduct non-destructive testing on the Device in their own laboratory, as Plaintiff's concerns regarding production of the Device are largely misplaced. While, as Plaintiff notes, Plaintiff has a duty to take reasonable steps to preserve evidence within his control, it would not be an abrogation of this duty for Plaintiff to allow Defendants to take temporary control over the Device. As noted above,

8

Defendants have expressed their willingness to enter a chain of custody protocol. Furthermore, remedies at law are available for spoilation of evidence. *See, e.g.*, *Pace v. Nat'l R.R. Passenger Corp.*, 291 F. Supp. 2d 93, 98 (D. Conn. 2003) (a party is under an obligation to preserve evidence when the party has notice that the evidence is relevant to litigation; the risk that the evidence would have been detrimental rather than favorable falls on the party responsible for its loss, and potential remedies for loss include an adverse inference jury instruction). Finally, Plaintiffs have not alleged that Defendants must show that their preferred laboratory is better equipped to conduct testing than Plaintiff's laboratory in order to gain permission from the court to conduct testing in their preferred facility. Accordingly, the risks raised by Plaintiff associated with removing the device from its current location are minimal and do not outweigh the benefits to Defendants.

Moreover, in opposing Defendants' request to test the Device, Plaintiff does not address Defendants' argument that allowing Plaintiff's representative to be present at testing would violate the work product doctrine and consulting expert privilege.[2] Pursuant to the work product doctrine, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative, and even if the court orders such materials to be produced, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative

---

[2] Though counsel for Plaintiff briefly addressed this point at the Conference, counsel noted only that Plaintiff did not expect to constantly look over Defendants' expert's shoulder as the expert performed testing or to have access to the expert's conclusions. The court does not find these points compelling, as they do not directly address whether Plaintiff's presence at testing, however passive, would violate the work product doctrine or consulting expert privileges.

9

concerning the litigation. Fed. R. Civ. P. 26(b). Similarly, Rule 26(b)(4) provides protection for communications between a party's attorney and its expert witnesses, as well as protection for "facts known or opinions held" by a non-testifying, consulting expert. *Id*.; *see Rasnic v. FCA US LLC*, No. 17-2064-KHV-GEB, 2018 WL 3861167, at *3-4 (D. Kan. Aug. 14, 2018). In support of their argument that the work product doctrine and consulting expert privileges would be undermined if Plaintiff were permitted to be present for testing, Plaintiff cites a District of Kansas case in which the court, despite "the lack of binding case law from . . . the Tenth Circuit Court of Appeals," elected to "follow the number of districts allowing the parties to conduct non-destructive testing outside the presence of the opposing party" and noted that "the sophistication of the device at issue does not lessen the work product or consulting expert protections afforded the testing party." *Rasnic v*, 2018 WL 3861167, at *7.

This court follows the District of Kansas and agrees with Defendants that the work product doctrine and consulting expert privileges would be undermined if Plaintiff were permitted to be present for testing. As a result, the court grants Defendants' Motion to Compel and compels production of the Device for testing in their expert's chosen facility, with chain of custody protocols for the Device to be agreed upon between the parties.

## CONCLUSION

For the foregoing reasons, this court respectfully orders as follows: Plaintiff's Motion is **DENIED without prejudice**, and Defendants' Motion is **GRANTED**.[3]

DATED: July 10, 2025                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").